We will hear argument next in No. 15-1286, AIP Acquisition against Level 3 Communications. Mr. Eng, have I pronounced your name correctly? Yes, Your Honor. Good morning. My name is Chi Eng. It's my first time here, so forgive me if I make some obvious errors. Some of us haven't been here that long either, so we're still making errors. Here I am representing AIP. Let me tell you that this is an appeal from a final decision in the IPR proceeding in the PAN office. I think there is one central issue here, and that is whether there is substantial evidence supporting the Board's conclusion of obviousness. The answer is no, because the Board relied on the conclusory opinion of an expert as its core factual finding. I think that is the issue that we need to decide here. Am I understanding or remembering correctly that the heart of this is you had an ATM-based system in one piece of prior art? At least in, was it Awami? Awami, yes. A local area network that inside that local area network used an IP protocol, and the expert said by, was it 1996? Is that the priority? He said by 1996 at the time of the invention. IP protocol use was one of a small number of well-known communication protocols for transit components of networks, and so one would have thought about using it. Yes, that is what he said, and if you look at the expert report, and that is paragraph 227 and paragraph 229 in the appendix, that is A700 and A701. So to answer your question, you have to look back at the record evidence to see whether that is supported, and that is exactly what I am trying to do in the brief to see what the evidence in the record was. So at that time, you know, you have the Weinstein 4G reference. You have Camero that shows the ATM network, which is a packet switch network for transiting using a virtual circuit communicating voice between PSTNs. And when you say virtual circuit, just explain to me, is that actually sending packets out of order across different paths and reassembling, or is that the opposite of that? Your Honor, a virtual circuit means what they were trying to do is to form a circuit, almost like a phone line, but it is virtual, as opposed to PSTN network, which you have a hard wire, a line, a circuit. So what makes it a virtual circuit? Is the actual path of all of the packets the same? What ATM does is that inside its framework, it first says, hey, someone's calling, and let's try to make a connection through a number of hubs or networks. And to do that, I have to reserve the resources for the phone call. So, say, hey, you know, I don't have one wire, you know, continuously going from one caller to the call party, so what you have is going through a number of switches, ATM calls them switches, and say, hey, switch. But will it be the same sequence of hubs for everything on that call in an ATM network? Once the circuit is reserved, then it's going to be staying constant for that call, for the duration of the call. And all the packets are delivered in order. That is correct, and that will be, you know, stay on for the duration of the call. But given these two references, the teachings of Kammerer and Iwami, why isn't it correct to say that the basic substitution of one protocol for another within a relatively finite universe of different choices was just a matter of choice, motivated by a desire to provide the benefit of a simpler system, a simpler network where all calls can interact with each other? Your Honor, the record evidence does not really show a finite number of simple solutions, or solutions that the ordinary artisan can latch onto and say, hey, I can do it this way, that way, or that way. There were, at that time, a handful of different networks. Everybody was looking for a way to find a network that would provide sort of optimal exchange of data, whether it's digitized voice or otherwise. That was the big rage back then, still is. And doesn't that give credibility to the Board's analysis here? Your Honor, I think one has to look at the time period, as you referred to. During that time period, there is the Weinstein 4G system in the record evidence, and what they did there, using an experimental ST protocol. An ST protocol is a reservation protocol. It would form a virtual circuit across a packet switch network. But Awami showed a network with using IP protocols. The experimental Weinstein 4G system does not use IP to carry the voice. I think Awami does not disclose the use of an IP protocol. Okay, so I'm just talking about the universe of so-called finite number of solutions. So that's one solution one can latch on to, and that's the ST. So now you talk about Awami. Awami itself, the network environment is a local area network. So why does that make a difference? I mean, I didn't see anything in the discussion. I think I don't remember anything that said lands are distance limited, but there's nothing about these claims that are not distance limited. And I also didn't see anything that suggested when you have in Awami and its land a cul-de-sac. That's my characterization. So what was it that would not have been either possible or obvious to put a second road into the cul-de-sac and make it no longer a cul-de-sac, but now a circle with two outlets? That's the question. There's nothing in the record evidence that says, hey, you can modify your local area network this way. Right, but if we have a, or I guess the board has a record in which there's a piece of prior art that says you can use non-circuit reserving, I can call it datagram, delivery systems using an IP protocol, and an expert says it would have been obvious for somebody in the other system to use the same thing, doesn't? It seems to me, I guess, tell me what's wrong with the conclusion that the board is entitled to credit that in the absence of some reason to say wouldn't work, bad idea, something like that. Right. During that time period, the local area network uses what's called the shared media to communicate. What it means is that you have one table, and all the terminals are connected to that. And that's what Iwami's local area network is at that time. So they're set up sort of in a series? Not in series, it's one wire and everybody latches, it's like a bus. A bus, okay. It's a bus. And all the terminals are connected to it. So everybody can actually theoretically listen to everyone. And because of that environment, all the data packets can collide. That's why the distance limitation. So given that technology, what an ordinary artisan would say, hey, I can run this cable across the United States and hook up all the telephones on it, and somehow I'm going to put internet protocol on it. That internet protocol is datagram, and it works. And I don't think that's what the expert is saying. There was only one statement here, one statement there. And I'm trying to say and to try to construct the mindset of what the ordinary artisan would be like, given this technology. You know, you make a point in your briefs, and you just made the point here about, well, there's a difference between the local area network. It's just limited. It wouldn't extend to a wide area network. But there's nothing in the claim that talks about local or wide area. Nothing in the claim that talks about how big the network is. Let me put it another way. I think you probably would agree that claim one would read on a system implemented on a local area network. Your Honor, I think you're correct. That the claim itself has no distance limitation or the particular type of network. It does say internet and internet protocol. So the question really is, when you do an obviousness analysis, you look at motivation combined, and also the combinability. A reasonable expectation of success of combining references. So by looking at this prior art, the Iwami, the question is whether an ordinary artisan could combine a local area network, or modify it, common sense or not, and make it into a transit network. And where's the evidence for that?  Okay. So, you know, the fundamental difference is that internet protocol is a datagram protocol. And datagram means all the packets are going all over the place, and somehow it can be put back together. That's the understanding at that time period. People understand telephones, circuit switch, there's a line. Except in the land world, they also understand this. Yet in the land world, there's also a line that's connected. But the internet protocol is different in that all the packets can go all over the place. And how is it obvious at that time to put the voice back together in a continuous stream? And that's the problem that has to be recognized. I don't think the evidence record shows that recognition. And your written description doesn't teach somebody how to do that. It assumes, maybe even makes express reference to how that is known in the art. The reconstitution in a proper sequence. The specification of the HMI patent did not go into how and the advantages of using the internet for the voice. That is correct. Why do you think the three judges in the PTAB didn't understand this argument of yours? I'm trying to understand what the board is thinking. I personally did not argue in front of the board below. It appears to me. I don't want to put words in the board's mouth. You know, if you rely on something that's conclusory, that seems to be some kind of hindsight analysis. And if you're not disciplined enough to look at the evidence and try to construct what was at that time period, an ordinary artisan would be looking at. There's always the danger of looking at what you understand now. And that is what is well known now. And have that thinking, looking at the problem back in 1990. Look, the internet was formed from the NSF net in 1990. ARPANET was the network that was formed earlier than that. And that was the commission in 1990. So 1990 was the ST protocol. And they're trying to form a virtual circuit protocol, trying to make internet into a virtual circuit network. At that time, the internet community said, which way are we going? So there's a lot of turmoil, really. It's not that well known during that time period. What was the internet? What is it? Where is it going to be? All they understood was that there are common standards to govern the internet. Because it's a galactic network. Okay, Mr. Eng. You've gone over your time. Two minutes. Two minutes for rebuttal. Okay. I'll reserve that time for my rebuttal. Mr. Wright. Good morning, and may it please the court. John Wright on behalf of the petitioner and appellee here at Level 3 Communications. So AIP has not argued any misapplication of the law in this case. It seeks review of facts directed to the combinability of CAMERL and AWAMI. Based on technical arguments that largely it did not present to the board below during the trial phase. I thought that the principle contention they have here is that there is a failure of evidence to meet your burden of establishing invalidity for obviousness by a preponderance of the evidence. And the failure of evidence is the absence of any basis for the conclusory assertion that somebody thinking about transit between two voice networks would borrow the LAN internet protocol option. And it's a failure of evidence problem. So there is substantial evidence supporting the board's conclusion that by 1996, one of ordinary skill in the art would have turned to internet protocol as the vehicle for transmitting voice data over a data network. And that over a data network that was connecting voice networks on each end. Obviously internet protocol was being used for transit in data networks. That's not the question. Correct. Use for voice. Use for voice. Okay. Right. Over a data network. You're correct that the claim doesn't exclude that data network being a LAN. So turning to the substantial evidence supporting that, the board. Can I just add to this? I'm sorry for the interruption. But assume with me for hypothetically that I think that the claim construction of internet protocol, while not expressly referring to datagram structure, implicitly does. I want to know what aspect of your argument would remain or maybe all of it, but how does that affect it? Because I'm not sure you're right about saying that the board at the institution stage, when construing the claim and rejecting the insertion of a datagram limitation, was actually excluding the possibility that that was already implicit. So with respect to the datagram versus virtual circuit argument, I don't think it's material to the board's ultimate finding. There were two ways that you could modify CAMREL. And the board in its decision recognized that. You could have a wholesale swap out of the network. And instead of having an ATM network there, you could put in an internet network. Or with the two pieces of art that we have, you could put in the LAN because the claims don't exclude having a LAN between two public switch telephones. But the second way that you can make the combination is by running IP, a voice data that's been converted to IP protocol over the existing ATM network. And in fact, that's what one of the primary benefits of going towards the internet protocol is that's what it was used for. It was designed to allow you to use the internet protocol. And it was at a level of abstraction where it didn't care what the underlying circuit was. So the second way that you would modify CAMREL is to take the voice data, convert it to an internet protocol, and then run it right over CAMREL's ATM network. And that's not excluded by the claims either. And in fact, is that the... How does that differ from, was it AAL5 or something? Right. So the principal thrust of AIP's arguments to the board was that, well, you would never run IP over CAMREL because CAMREL is directed to reducing lag. And if you ran IP over CAMREL, well, that would increase lag. That was really the primary thrust of AIP's argument to the board. In our reply to that, we noted that Dr. Weinstein, AIP's expert, noted that in his declaration that AAL5, which is ATM Adaptation Layer 5, was available in 1996 specifically to run, or to help run, IP formatted data over an ATM network. So... Forgive the confusion. Why does that not make this into an anticipation case if that is what is meant in the claims by an internet protocol? Well, it's not anticipation because CAMREL doesn't talk about internet protocol at all. It's strictly focused on an improvement to ATM for carrying voice. And UAMI, which has a public switch telephone network converting to IP, sending it over a LAN to a generic... That's what I'm... I think we're not communicating well because I'm not... I'm trying to understand what the AAL5 is in relation to the claims requirement of internet protocol. Okay, so AAL5 is an adaptation layer. If you look at the OSI stack, AAL5 would be an adaptation layer that allows you to take data that's been formed... So, because ATM uses fixed-length packets and because IP has variable-length packets, what AAL5 does is it takes a variable-length packet, chops it up into fixed-length packets, and at the very... This is an IP formatted voice data, for instance. And then at the tail end of the last packet, it puts in information that lets the converter know this is the last packet. So, with AAL5, you could take... In the ATM network, you could take a voice data that has been converted to internet protocol, which is in the claims, and then you can transmit that over an ATM network. So, back in 1996, people were looking for... There was a recognition, and this is in the Peterson reference at the tail end of the joint appendix. By 1996, and both experts agreed on this, and the board recognized this, IP is the direction that everybody was going for global data communication, including voice. And the whole AAL5 argument is that even at that time, people were looking for ways for an ATM network to help it to run IP over an ATM network, and that's what AAL5 was for. So, I think we have to step back and look at the very broad scope of the claims here and what the board found and the substantial evidence sitting behind the board's decision. There is no dispute as to what the references teach, and the only thing that the board found that the only thing missing from Camerill is that the second protocol is an internet protocol. That's it. And the board found that AWAMI filled that gap by showing that internet protocol is used as a vehicle to transmit voice data over a network. And that, in fact, the only thing that AWAMI is lacking is the second conversion back to a telecommunications protocol. With those undisputed facts and the broad scope of the claim, and the fact that the claim isn't… he claimed the concept. And throughout Machinsky's patent, he explicitly, expressly, over and over, relies on conventional servers, conventional data networks, conventional converters. And by 1996, the board found that the obvious choice for transmitting voice data over a data network would have been IP at that point. I take it your fundamental argument is that there's no legal issues involved. This is a factual dispute between you and the other party, and that the question is not, for us at least, is not who's factually correct. I take it your argument is, the question is, was there substantial evidence in the record to support the way the board came out. Is that your thinking? Precisely. And the question, as I understand it from Mr. Angus, what would someone in 1996 of the proper skill in this art have done with that information? Yes, that's correct. How do we differentiate guessing about what someone in 1996 of ordinary skill in this art would do from hindsight, looking back from the year 2015? Well, there's no need to guess. The board relied on both of the experts here. Dr. Jones was Level 3's expert, and Dr. Weinstein was AIP's expert. And both of those experts agreed that by 1996, the Internet was coming to prominence. And the board relied on those statements properly from the experts. AIP had the opportunity to depose Dr. Jones, noticed his deposition, and then chose not to depose him in the end. There's also documentary evidence supporting the board's decision. And perhaps the best documentary evidence is the Peterson reference, which is at the very end of the joint appendix. It's on A1543, and that's a textbook that AIP entered into the record to show the state of the art at the time. And there, the Peterson reference says that we have presented IP as the only protocol for global internetworking. And then that page goes on to say that, well, there are proponents for ATM. And they say that ATM is the way to go, the virtual circuit fixed-length packets. But then it goes on to say that, well, there are people that are proponents of IP. And they see ATM as just another technology over which you can run IP. I'm reading from Peterson right now. Where on that page? I am on 1543, if you come down probably just above halfway. They see ATM, this is the proponents of IP, they see ATM as just another technology over which you can run IP. After all, IP has been run over every other technology that has come along, so why should ATM be any different? And then it goes on to acknowledge that there are challenges for both IP and ATM. And, you know, this was the state of the art at the time. And AIP, the original application here didn't refer to the internet. It's not until a continuation in part, an added material in the 1996 application, where they bring in IP. And there they rely simply on conventional, they say that the data converters are known. And they tell you in the Machinsky patent where to buy the data converters. The networks were known. It says in the Machinsky patent that the IP protocol was known. I can point you to any of these points in the patent. That is the direction that the industry was headed. And the only thing that Machinsky is claiming is the broad concept, not how to do it, but the broad concept of saying, well, use IP as your protocol. It doesn't even tell you how to do it. And that's not inventive. And there's, again, just to return to this point, Judge Coyier, that the board relied on the experts. The board relied on Peterson. And there's substantial evidence supporting the board's ultimate conclusion that the obvious choice by 1996 for transmitting voice data over a data network would have been IP. You're saying claim one is just directed to an abstract idea that doesn't claim something more? The point of novelty, surely, certainly wasn't at issue. I see I have, I think, 32 seconds left. Absent further questions, I'll yield the remainder of my time. No further questions. Thank you. Troublemaker. Your Honor? Sir, a couple of minutes, please. Two minutes. Two points. Do I summarize the case that they're making correctly, that this is a question of fact that you all are arguing over? Like I said, the issue is about whether there's substantial evidence. And our job is to determine whether there's substantial evidence in the record to support the board's conclusion, even if we disagree with it. Well, I think the Federal Circuit has said in some cases that the court does not look for alternative reasoning to support a board's decision. If the reasoning is somewhat clear, you would uphold that decision. So that's that. So two points I would like to make is that there's no evidence in the record that says, you know, Cameron teaches a generic packet switch network.  And such that in this generic network, you can substitute local area network, ATM, whatever other packet switch networks. No evidence. So what would an ordinary artisan do with an IP and Cameron's ATM? Well, AAL5 is one, but that's an ATM protocol. Under the board's clean construction of internet protocol, lowercase i and lowercase p, it excludes ATM protocol. So you don't read, you know, that combination would be outside of the scope of internet protocol. Thank you very much. Thank you, Mr. Hancock. Thank you. Both parties, case is submitted.